UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

ASHLEY ELLIS,

                                        Plaintiffs,

          -against-

CITY OF NEW YORK, BILL DE BLASIO, Individually,
DERMOT SHEA, Individually, TERENCE MONAHAN,
Individually, and JOHN and JANE DOE 1 through 10,
Individually, (the names John and Jane Doe being fictitious,
as the true names are presently unknown),

                                  Defendants.

--------------------------------------------------------------------------------X

**COMPLAINT**

Docket No.

<u>Jury Trial Demanded</u>

Plaintiff ASHLEY ELLIS, by her attorneys, Brett H. Klein, Esq., PLLC, complaining of the defendants, respectfully alleges as follows:

**<u>Preliminary Statement</u>**

1.     Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitution of the United States.  Plaintiff also asserts supplemental state law claims.

**<u>JURISDICTION</u>**

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

**<u>VENUE</u>**

4.     Venue is properly laid in the Southern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

## JURY DEMANDS

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to

Fed. R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff ASHLEY ELLIS is a thirty-one-year-old female resident of North

Carolina.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police

Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police

department, authorized to perform all functions of a police department as per the applicable

sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.      Defendant BILL DE BLASIO was, at all times relevant to this Complaint, Mayor of

the City of New York and had final policymaking authority with respect to the NYPD and was

further responsible for appointing Commissioner DERMOT SHEA.

10.     Defendant DERMOT SHEA was, at all times relevant to this Complaint, the Police

Commissioner for the NYPD and had final policymaking authority with respect to the NYPD.

11.     Defendant TERENCE A. MONAHAN was, at all times relevant to this Complaint,

the Chief of Department for the NYPD, and was delegated final policymaking authority with respect

to the NYPD's policies relating to the management of protests.

12.     That at all times hereinafter mentioned, the individually named defendants, JOHN

and JANE DOE 1 through 10, were duly sworn police officers of the NYPD and were acting

under the supervision of said department and according to their official duties.

13.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

14.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## **FACTS**

15.     On June 4, 2020, plaintiff ASHLEY ELLIS encountered a protest in Manhattan for the Black Lives Matter (hereinafter "BLM") movement.

16.     In New York City, large scale protests in support of BLM, and in response to the death of George Floyd, and the history of police killings of unarmed black people, began on May 28, 2020, and essentially occurred daily through early June, throughout the City.

17.     The protests were overwhelmingly peaceful, as was the protest plaintiff ELLIS encountered, nonetheless the NYPD officers responded by unjustifiably corralling people, effecting mass arrests without probable cause, and deploying pepper spray, batons, and other force against protesters.

18.     With respect to plaintiff ELLIS, during the evening of June 4, 2020, plaintiff was walking from her parked car to her house when she observed a large police presence, including police in riot gear near the intersection of 138th and Brook Avenue, in the Bronx.

19.     The officers had detained protesters and formed a barrier blocking off the street.

20.     Upon observing the large police presence, plaintiff ELLIS spoke to detainees out of concern for their well-being before continuing on her route home.

21.     As plaintiff ELLIS walked away towards her nearby home, she was stopped by a male NYPD officer who said she could not leave the area.  Plaintiff ELLIS explained that she lived two blocks away and was trying to get to her house.  The defendant officer reiterated that she could not leave.

22.     Plaintiff ELLIS continued to speak to the defendant officer peacefully and otherwise lawfully, who then needlessly, brutally, and otherwise unreasonably grabbed plaintiff by her left arm.  The defendant officer subsequently twisted plaintiff ELLIS's arm behind her back, causing it to pop.

23.     Plaintiff expressed that she was in pain and asked the defendant officer to loosen the grip on her arm.  The defendant officer twisted plaintiff's arm further behind her back in response.

24.     Three male NYPD defendant officers arrived during this encounter.

25.     The defendant officers placed zip ties on plaintiff ELLIS's left arm in an overtight manner and attempted to do so on the right arm but were unable to fit it around her wrist.

26.     Despite that plaintiff ELLIS was not committing a crime or engaged in any threatening or violent behavior, had been attempting to leave the area, at least four NYPD officers continued to unreasonably use force against plaintiff and arrest her.

27.     Defendant officers grabbed plaintiff ELLIS's hair to move her to the ground, kneed plaintiff in the stomach, and hit plaintiff's right hand multiple times with a baton.

28.     Plaintiff ELLIS was then slammed face-first onto the roadway by defendant

officers, causing her to strike her face and scrape her right knee.

29.    Further, while she was on the ground, at least one officer obstructed her breathing by kneeling on her back and neck.

30.    As a result of the defendants' actions, plaintiff ELLIS was terrified and feared for her life.

31.    Once on the ground, defendant officers moved the zip tie around plaintiff's right wrist.

32.    Plaintiff ELLIS remained on the ground for a few minutes before she was picked up by two defendant officers and moved to 136th and Brook Avenue and told to sit with the other detainees.

33.    Plaintiff ELLIS remained on the ground for a few minutes and was then handed off to two officers, who moved her to 136th and Brook Avenue to sit with the other detainees.

34.    Plaintiff ELLIS requested that the defendant officers loosen the zip ties because they inhibited her ability to sit down and caused her pain, but the officers refused do so.  Plaintiff ELLIS also asked for medical treatment for her arm.

35.    In response, defendant officers knocked plaintiff's feet out from under her and forced her into a sitting position.  This exacerbated the pain in plaintiff's left arm.

36.    The detainees, noticing that plaintiff ELLIS was in pain, called for medical help on her behalf.

37.    EMT personnel arrived to aid plaintiff ELLIS about fifteen minutes after being seated in the detainee area.  After looking at her arm, EMT personnel asked NYPD officers to cut the zip ties, to which they complied.

5

38.     Plaintiff ELLIS had been in zip ties for approximately one hour.

39.     EMT personnel asked an NYPD officer located in the detainee area whether plaintiff ELLIS could be taken in their ambulance or if she was under arrest.  The NYPD officer said he was not sure and would walk with plaintiff ELLIS to the ambulance while he waited for someone to confirm.

40.     On the walk to the ambulance, the NYPD officer released Ms. ELLIS from custody when he left her and the EMT personnel.  Ms. ELLIS was never given any ticket or summons.

41.     EMT personnel placed plaintiff ELLIS's left arm in a sling and gave her ice packs.  Ms. ELLIS then returned home.

42.     In addition to suffering pain in her stomach and right hand, Ms. ELLIS also sustained fractures to her left arm, including to both her elbow and wrist, nerve damage in both arms, including cubital tunnel in her elbow and carpal tunnel in both hands, as well as significant and upon information and belief, chronic, emotional distress.

43.     The NYPD's highest-ranking uniformed officer, defendant Chief of Department Terence Monahan, was present during the action, along with at least 24 other uniformed supervisory officers – chiefs, lieutenants, captains, or inspectors in white shirts.

44.     Police arrested and took to jail at least 263 people, more than at any other protest in New York since Floyd's killing as of that date. Some were released later that night; others the next afternoon. One was held for a week. Most were charged with Class B misdemeanors for curfew violations or unlawful assembly. They were given summonses or desk appearance tickets with court dates in early October that were, upon information and belief, dismissed by the Bronx

County District Attorney's Office.

45.     Defendant New York Police Commissioner Dermot Shea confirmed the premeditated nature of the operation, stating at a news conference the next day: "We had a plan which was executed nearly flawlessly in the Bronx." Shea described the protest as an attempt by "outside agitators" to "cause mayhem," "tear down society," and "injure cops."   This characterization proffered by defendant Shea was false, as the protest was objectively and demonstrably peaceful until the police responded with violence.

46.     Defendants DE BLASIO, SHEA, MONAHAN, and JOHN and JANE DOE 1 through 10 either directly participated in the above illegal acts, failed to intervene in them despite a meaningful opportunity to do so, or supervised and approved of, oversaw, and otherwise participated in the aforementioned misconduct and unconstitutional policies of the City of New York.

47.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, employing excessive force in response to peaceful protests and engaging in an improper protest response tactic known as kettling, whereby protestors are corralled in such a manner that they are prevented from dispersing and then forcefully arrested, and often placed in excessively tight handcuffs, as were plaintiffs here.

48.     The aforesaid event is not an isolated incident.  Defendant CITY OF NEW YORK is aware that the NYPD has a long history of documented instances of aggressive policing towards protestors, and of the NYPD responding to protests with excessive force and kettling.

49.     This history of aggressively policing protests and improperly arresting protestors

has been documented by the New York Civil Liberties Union following anti-war protests in 2003 and the Republican National Convention (RNC) protests in 2004, and with respect to the RNC protests further confirmed by the Civilian Complaint Review Board, which published its own findings that then-Deputy Chief MONAHAN and another deputy chief failed to issue orders to disperse which were sufficiently audible, understandable, or with enough time to allow protesters to actually disperse before effecting arrests, resulting in the mass arrest protesters.

50.     Moreover, following the Occupy Wall Street protests in 2011, the Protest and Assembly Rights Project issued a 2012 report which also detailed complaints of excessive force against protesters, bystanders, lawyers, legal observers, and journalists.

51.     With respect to the BLM protest movement, the aggressive tactics and policies of responding to peaceful protests with excessive force and failing to allow protestors an opportunity to disperse before effecting mass arrests, has been well documented.  Further, these policies and practices were directed and ratified by the NYPD supervising officers and Mayor DE BLASIO, who failed to adequately train or supervise the NYPD officers who were deployed to police the protests, and thereafter praised said officers' response to the BLM protests, thereby authorizing, sanctioning, and encouraging the aggressive and violent police tactics that resulted in the constitutional violations suffered by plaintiffs and others.

52.     The pervasiveness of these improper policies and practices, and the inadequate training and supervision of officers policing the BLM protests, has been well documented by numerous law lawsuits arising out of the 2020 arrests, including, *Payne et al*. *v. de Blasio et al.* No. 20-cv-08924 (S.D.N.Y.), *Gelbard et al. v. City of New York et al.*, 20-cv-3163 (E.D.N.Y.), *Sierra et al. v. City of New York et al.*, 20-cv-10291 (S.D.N.Y.), *Jeffrey v. City of New York et*

*al.*, 20-cv-2843 (EDNY), among others.

53.     Further, the Attorney General of the State of New York has brought an action, *People of the State of New York v. City of New York et al.*, 21-cv-0322 (S.D.N.Y.) for declaratory and injunctive relief in an effort to end the NYPD's established practice of suppressing peaceful protests through the use of excessive force and mass arrests.

54.     Despite notice of the forgoing, the CITY OF NEW YORK, Mayor DE BLASIO, Commissioner SHEA, and Chief MONAHAN, have failed to train or supervise subordinate officers or take corrective action to address the NYPD's pervasive use of force and mass arrests of protests, thereby ratifying and endorsing said behavior such that it constituted a City policy.

55.     Defendant CITY OF NEW YORK, Mayor DE BLASIO, Commissioner SHEA, and Chief MONAHAN ratified the unconstitutional policies and practices employed against BLM protestors via their support for the NYPD's response to the BLM protests, and their failure to train, supervise, and discipline their subordinate officers.  These failures and policies were the moving force behind the constitutional violations suffered by plaintiff and constituted deliberate indifference to plaintiffs' and other protestors' rights.

56.     On September 30, 2020, Human Rights Watch issued an extensive report based on its investigation of the incident entitled, "'Kettling' Protestors in the Bronx: Systemic Police Brutality and Its Costs in the United States." https://www.hrw.org/report/2020/09/30/kettling-protesters-bronx/systemic-police-brutality-and-its-costs-united-states.  The report provided, *inter alia,* a detailed account of the police response to the June 4, 2020 peaceful protest.  It describes the City's ineffectual accountability systems that protect abusive officers, shows the

shortcomings of incremental reforms, and makes the case for long needed and overdue structural change.

57.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

58.     All of the aforementioned acts deprived plaintiff ASHLEY ELLIS of the privileges and immunities guaranteed to citizens of the United States by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

59.     The acts complained of were carried out by the individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

60.     The acts complained of were carried out by the individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

61.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

62.     As a result of the foregoing, plaintiff sustained, *inter alia*, physical injuries, emotional distress, and deprivation of her constitutional rights.

## **Federal Claims**

### **AS AND FOR A FIRST CAUSE OF ACTION**
**(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)**

63.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64.     Defendants arrested plaintiff ASHLEY ELLIS, without probable cause, causing her to be detained against her will for an extended period of time and subjected to physical restraints.

65.     Defendants caused plaintiff ASHLEY ELLIS to be falsely arrested and unlawfully imprisoned.

66.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

67.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "65" with the same force and effect as if fully set forth herein.

68.     The level of force employed by defendants was excessive, objectively unreasonable and otherwise in violation of plaintiff ASHLEY ELLIS's constitutional rights.

69.     As a result of the aforementioned conduct of defendants, plaintiff ASHLEY ELLIS was subjected to excessive force and sustained physical and emotional injuries.

70.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Violation of First Amendment under 42 U.S.C. § 1983)

71.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72.     In committing the acts and omissions complained of herein, defendants acted under color of state law, individually and in concert, to deprive plaintiff of the rights protected by the First Amendment to the United States Constitution by directing the plaintiff to be targeted for law enforcement action in retaliation for their free speech.

73.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Failure to Intervene under 42 U.S.C. § 1983)

74.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

75.     Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights was being violated in their presence by other officers.

76.     The defendants failed to intervene to prevent the unlawful conduct described herein.

77.     As a result of the foregoing, plaintiff was subjected to excessive force, her liberty was restricted for an extended period of time, she was put in fear of her safety, she was humiliated and subjected to handcuffing and other physical restraints, arrested, and her First Amendment rights were violated.

12

78.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

79.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80.     The supervisory defendants personally caused plaintiff constitutional injury by being participating in or being deliberately or consciously indifferent to the rights of plaintiff in failing to properly supervise and train their subordinate employees.

81.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

82.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

84.     The aforementioned customs, policies, usages, practices, procedures and rules of

the New York City Police Department included, but were not limited to, responding to peaceful protests with excessive force and failing to allow protestors an opportunity to disperse before effecting mass arrests.  In addition, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of plaintiff's rights as described herein.  As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

85.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff.

86.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

87.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department were the moving force behind the Constitutional violations suffered by plaintiff as alleged herein.

88.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department, plaintiff ASHLEY ELLIS was subjected to excessive force, falsely arrested, unlawfully imprisoned, and her First Amendment rights were infringed.

89.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

90.     All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

        A.     To be free from false arrest/unlawful imprisonment;

        B.     To be free from excessive force; and

        C.     To free speech.

91.     As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## Supplemental State Law Claims

92.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "91" with the same force and effect as if fully set forth herein.

93.     Within ninety (90) days after the claim herein accrued, plaintiff ASHLEY ELLIS duly served upon, presented to and filed with the CITY OF NEW YORK, Notices of Claim setting forth all facts and information required under the General Municipal Law 50-e.

94.     The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof and more then thirty (30) days have elapsed since the presentation of such claim as aforesaid.

95.     This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

96.     Plaintiff ASHLEY ELLIS has complied with all conditions precedent to maintaining the instant action.

97.     This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(<u>Assault under the laws of the State of New York</u>)

98.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "97" with the same force and effect as if fully set forth herein.

99.     As a result of the foregoing, plaintiff ASHLEY ELLIS was placed in apprehension of imminent harmful and offensive bodily contact.

100.    As a result of defendants' conduct, plaintiff ASHLEY ELLIS has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

101.    Defendant City, as employer of the each of the individually named defendant officers, is responsible for said officers' wrongdoing under the doctrine of *respondeat superior*.

102.    As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(<u>Battery under the laws of the State of New York</u>)

103.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "102" with the same force and effect as if fully set forth

16

herein.

104.    Defendants made offensive contact with plaintiff ASHLEY ELLIS without privilege or consent.

105.    As a result of defendants' conduct, plaintiff ASHLEY ELLIS suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

106.    Defendant City, as employer of the each of the individually named defendant officers, is responsible for said officers' wrongdoing under the doctrine of *respondeat superior*.

107.    As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**AS AND FOR A NINTH CAUSE OF ACTION**
(False Arrest under the laws of the State of New York)

108.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "107" with the same force and effect as if fully set forth herein.

109.    Defendants arrested plaintiff ASHLEY ELLIS without probable cause.

110.    Plaintiff ASHLEY ELLIS was detained against her will for an extended period of time and subjected to physical restraints.

111.    As a result of the aforementioned conduct, plaintiff ASHLEY ELLIS was unlawfully imprisoned in violation of the laws of the State of New York.

112.    As a result of the aforementioned conduct, plaintiff ASHLEY ELLIS suffered

physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

113.    Defendant City, as employer of the each of the individually named defendant officers, is responsible for said officers' wrongdoing under the doctrine of *respondeat superior*.

114.    As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Violation of Article I, Section 8 under the New York State Constitution)

115.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "114" with the same force and effect as if fully set forth herein.

116.    The aforementioned conduct violated plaintiff's rights to speech, expression, and to assemble under Article I, Section 8 of the New York State Constitution.

117.    As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Negligent Screening, Hiring, and Retention under the laws of the State of New York)

118.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "117" with the same force and effect as if fully set forth herein.

119.   Upon information and belief, defendant CITY OF NEW YORK failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who conducted and participated in the arrest, prosecution, and use of force against plaintiff ASHLEY ELLIS.

120.   Defendant CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct heretofore alleged in this Complaint.

121.   As a result of the foregoing, plaintiff ASHLEY ELLIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### AS AND FOR A TWELFTH CAUSE OF ACTION
(Negligent Training and Supervision under the laws of the State of New York)

122.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "121" with the same force and effect as if fully set forth herein.

123.   Upon information and belief, the defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrest and use of force against plaintiff ASHLEY ELLIS.

124.   As a result of the foregoing, plaintiff ASHLEY ELLIS entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff demands judgment and pray for the following relief, jointly and severally, against the defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individual defendants in an amount to be determined by a jury;

(C)     reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as appears just and proper.

Dated: New York, New York
        September 2, 2021

> BRETT H. KLEIN, ESQ., PLLC
> Attorneys for Plaintiff ASHLEY ELLIS
> 305 Broadway, Suite 600
> New York, New York 10007
> (212) 335-0132
>
> By:      *Brett Klein*
>          _____
>          BRETT H. KLEIN (BK4744)

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

ASHLEY ELLIS,

                                            Plaintiff,

                                                                            Docket No.

                -against-

CITY OF NEW YORK, BILL DE BLASIO, Individually,
DERMOT SHEA, Individually, TERENCE MONAHAN,
Individually, and JOHN and JANE DOE 1 through 10,
Individually, (the names John and Jane Doe being fictitious,
as the true names are presently unknown),

                                            Defendants.

-------------------------------------------------------------------------------X


**COMPLAINT**


**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132